IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NEBL, INC. AND
JEFFREY DANN, M.D.,

      Plaintiffs,

v.

AMERICAN MEDICAL SYSTEMS, INC.,

      Defendant.

Civil Action No.: 04-12482RGS

**DEFENDANT AMERICAN MEDICAL SYSTEMS, INC.'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR A MORE DEFINITE STATEMENT
PURSUANT TO FED. R. CIV. P. 12(e)**

**INTRODUCTION**

Unfocused, protracted, expensive litigation is a significant danger for the court and the

defendant in a case such as this one involving allegations of misappropriation of "confidential

information" when the plaintiff fails to identify specifically the "confidential information"

allegedly provided to the defendant. Plaintiffs NEBL, Inc. and Jeffrey Dann, M.D. ("Plaintiffs")

have pled claims for alleged breach of a confidential disclosure agreement, alleged misuse of

confidential information, and failure to name Dr. Dann as an inventor on three patents.

Defendant American Medical Systems ("AMS") has been unable to locate any confidential

documents or video in its files from Plaintiffs. Plaintiffs refuse to identify with any particularity

the confidential information they allege AMS misused, and fail to indicate which claims of the

three patents-at-issue are the claims to which they allege inventorship, leaving AMS severely

disadvantaged if not unable to respond to their complaint. Further, Plaintiffs' vague complaint

robs this Court and AMS of the opportunity to evaluate likely defenses and dispositive motions

and leaves discovery subject to waste and abuse. AMS cannot reasonably be expected to be able to refute claims that it misused information, without knowing what information it allegedly misused. Thus, AMS respectfully requests that this Court grant AMS's motion for a more definite statement under Federal Rule of Civil Procedure 12(e) and order Plaintiffs to specifically identify the "confidential information" that forms the basis of their complaint, and to indicate which claims of the three patents-at-issue are the claims to which they allege inventorship, with the particularity and specificity necessary for this Court and AMS to evaluate and answer its claims, tailor an appropriate scope for discovery, and consider early dispositive motion practice.

## FACTUAL BACKGROUND

AMS researches, designs, manufactures and sells medical devices for treating a variety of male and female health disorders, including female urinary incontinence.

In 1997, Plaintiffs and AMS entered a confidential disclosure agreement wherein AMS might "evaluate certain information regarding product ideas conceived by [Plaintiffs] or products developed or under development by [Plaintiffs] which relate to a vaginal sling procedure kit and method for treatment of female urinary incontinence . . . ." (Coco Decl. Ex. A, Confidential Disclosure Agreement attached to Letter.) Pursuant to the agreement, Plaintiffs agreed to stamp or mark as "confidential" any confidential information disclosed to AMS, and AMS agreed to maintain in confidence any such confidential information and to use it only for evaluation purposes. (*Id.* ¶¶ 1-2.)

On November 23, 2004, Plaintiffs sent AMS a letter with a copy of a complaint filed that same day in the U.S. District Court, District of Massachusetts. In its letter, Plaintiffs claimed that Dr. Dann had disclosed a device and a method for implanting a vaginal sling by inserting the tool through the abdomen and pulling the sling up. (Coco Decl. Ex. A, Letter.) Plaintiffs further claimed that Dr. Dann had sent a video of the procedure to AMS. (*Id.*) Upon receipt of

2

Plaintiffs' letter, AMS conducted an internal search of its company files for allegedly-disclosed "confidential information" and to date has been unable to find copies of any documents or video disclosing the device and procedure described by Plaintiffs.

Plaintiffs Complaint and Jury Demand ("Complaint") alleges claims for breach of contract (Count I), failure to name an inventor on U.S. patent Nos. 6,612,977 (the "977 patent"), 6,652,450 (the "450 patent"), and 6,802,807 (the "807 patent") (Counts II-IV), and unjust enrichment (Count V). (Pls.' Compl. dated November 23, 2004.) The foundation for each of Plaintiffs' claims is its allegation of misappropriation of "confidential information," alleged in its entirety in paragraphs seven and eight of its claim for breach of contract:

> 7.   On December 3, 1997, AMS counter-executed a written contract titled "Confidential Disclosure Agreement" and attached hereto as Exhibit A. Plaintiffs provided **information** concerning methods and devices for implanting vaginal slings to AMS with an understanding of confidentiality.
>
> 8.   AMS used **confidential information** of Plaintiffs for purposes other than its evaluation of the products referred to in the Confidential Disclosure Agreement.

(*Id.* at ¶¶ 7-8) (emphasis added.)  Plaintiffs have not pled with any further specificity. Plaintiffs' allegation of misappropriation of "confidential information" fails to identify the specific "confidential information" that Plaintiffs allegedly disclosed to AMS and that AMS allegedly misused.   Each subsequent claim realleges Plaintiffs' vague allegation of "confidential information" misappropriation without further explanation.   (*Id.* at ¶¶ 12, 15, 18, 21.) Additionally, Plaintiffs' three claims alleging failure to name an inventor fail to indicate which claims of the three patents-at-issue are the claims to which they allege inventorship. (*Id.* at ¶¶ 13, 16, 19).

AMS has repeatedly requested an explanation for the basis of Plaintiffs' claims. Plaintiffs have refused AMS's requests, despite alleging having such information. On December 10, 2004, AMS requested "information Dr. Dann believes that he provided to AMS . . . ." (Coco

3

Decl. Ex. B.) Specifically, AMS requested "copies of all other communications on the same subject, such as any written idea submissions and any communications that memorialize what Dr. Dann believes he communicated in confidence or invokes the Confidential Disclosure Agreement." (*Id.*) Plaintiffs sidestepped AMS's request stating, "[w]e certainly appreciate your request for the information that Dr. Dann provided to AMS, although AMS is certainly in possession of this information as well." (Coco Decl. Ex. C.) Plaintiffs chose instead to respond with a request to AMS for broad discovery, including:

> All documents (including e-mails, etc.) dated on or before July 27, 2001 and pertaining to (i) Dr. Dann or his work, (ii) any device or method for implanting a vaginal sling by inserting a tool through the abdomen and pulling the sling up, rather than attempting to insert the sling from below, (iii) any decision to allocate funding or other resources to development of such a product, or analysis of the market for such a product, and (iv) all work pertaining development of the SPARC urethral support sling products.

(*Id.*)

Having searched its files, AMS informed Plaintiffs that it found no copies of what, if anything, Plaintiffs provided to AMS. (Coco Decl. Ex. D.)

Plaintiffs' general reference to devices for implanting vaginal slings is neither specific nor helpful. The field of suspension procedures for correction of female urinary incontinence has been active for many years prior to 1997 and there is a large body of literature discussing treatments relevant to the area. For example, AMS's '977, '450, and '807 patents cite many dozens of publications, some at least as early as 1948. The first six pages of the '977 patent, listing patents and articles in the public domain, are found at Exhibit E to the Declaration of Stephen L. Coco. It is presently impossible for AMS and the Court to determine a) what, if any, information Dr. Dann provided and marked "confidential," b) whether any such information was already in possession of the public and/or AMS at relevant times, and c) whether any such

4

information is relevant to the '977, 450 and '807 patents. AMS explained that it could not reasonably respond to Plaintiffs' Complaint nor to Plaintiffs' request for documents and information without knowing what the subject matter of Plaintiffs' alleged disclosure was. (*Id.*) Accordingly, AMS invited Plaintiffs to present to AMS why they believe they are entitled to be a named inventor on the identified patents and entitled to some form of compensation. (*Id.*) AMS noted that in the alternative, AMS would be willing to accept service of Plaintiffs' Complaint and advised Plaintiffs that, in that event, AMS would move for a more definite statement under Federal Rule of Civil Procedure 12(e) of what Plaintiffs allegedly disclosed to AMS. (*Id.*)

On February 28, Plaintiffs requested that AMS accept service of their Complaint effective that day and requested that AMS agree to waive its right to seek a more definite statement of its allegations. (Coco Decl. Ex. F.) AMS agreed to accept service of Plaintiffs' Complaint on March 1, 2005, and reserved its right to seek a more definite statement. (Coco Decl. Ex. G.) AMS seeks a more definite statement to allow AMS to answer the Complaint and to avoid unfair waste of time and resources.

## ARGUMENT

I. **AMS Is Entitled To A More Definite Statement Pursuant To Federal Rule of Civil Procedure 12(e) Because Plaintiffs' Allegation of "Confidential Information" Misappropriation is Too Vague and Ambiguous For AMS To Reasonably Frame A Response.**

Federal Rule of Civil Procedure 12(e) provides, "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."

This Court has granted such a motion where, as here, a plaintiff's complaint gives no guidance as to the specific subject matter of a claim for breach of contract. *First Mut., Inc. v.*

Word 35022333.1

*Rive Gauche Apparel Distrib.*, Civ. A. No. 90-10899-Z, 1990 WL 235422, at *4 (D. Mass. Dec. 21, 1990) (Coco Decl. Ex. H.) In *First Mutual*, the plaintiffs-franchisees alleged that defendants-franchisors failed to cooperate under settlement and license agreements. The court noted:

> [Plaintiffs' allegation] supports at least a colorable contract claim. Nevertheless, it remains unclear precisely which acts by which defendants constitute a breach under the plaintiffs' theory of the case. While the contract claims are not so lacking in particularity as to merit dismissal, **defendants are entitled to a more definite statement of all allegations supporting these claims**.

*Id.* (emphasis added.) Accordingly, the court ordered the plaintiffs to provide a more definite statement identifying the particular acts which constitute the alleged breach of contract.

Additionally, a Massachusetts court has ordered a plaintiff to "identify with greater particularity" the specific confidential information it alleged was misappropriated *Cambridge Internet Solutions, Inc. v. Avicon Group*, No. 99-1841, 1999 WL 959673, *4 (Mass. Super. Sept. 21, 1999) (Coco Decl. Ex. I.) In *Cambridge*, the plaintiff brought trade secret claims against former employees for allegedly violating a non-disclosure agreement by misappropriating the plaintiff's "source codes, work processes and customer deliverables." *Id.* Upon the defendants' motion to dismiss, the court noted:

> Where **[plaintiff] should have knowledge of the particular documents and source codes at issue,** it is appropriate for [plaintiffs] to **identify with greater particularity the specific customer material it claims was misappropriated**. Defendants are entitled to a more definite statement of the specific trade secrets at issue.

*Id.* (emphasis added). The court noted that identification was necessary "to ensure that plaintiffs are not using an unmeritorious lawsuit to discover a competitor's trade secrets." The court ordered the plaintiff to provide a more definite statement identifying with greater particularity the specific customer material and/or trade secrets it alleged to have been misappropriated. *Id.* at *4.

6

As *Cambridge* noted, there are compelling policy reasons for requiring early disclosure of the allegedly-disclosed "confidential information," not the least of which is that early disclosure prevents expenditure of the court's and a defendant's resources on a meritless claim. The United States District Court of the Southern District of California stated this and other strong policy reasons for the early disclosure requirement:

> First, it promotes well-investigated claims and dissuades the filing of meritless trade secret complaints. Second, it prevents plaintiffs from using discovery processes as a means to obtain the defendant's trade secrets . . . . Third, the rule assists the court in framing the appropriate scope of discovery and determining whether plaintiff's discovery requests fall within that scope . . . . Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation.

*Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999) (citations omitted). Case law supports an order requiring Plaintiffs to specifically identify the confidential information it allegedly disclosed to AMS.

### A. Plaintiffs' Complaint Is So Vague And Ambiguous That AMS Cannot Reasonably Be Required To Frame A Response.

The policy and reasoning of *Cambridge, Computer Economics* and other trade secret misappropriation cases apply with equal force to the "confidential information" misappropriation allegations on which each of Plaintiffs' claims rely. That is, the potential harm and prejudice to AMS, if required to litigate against Plaintiffs' vague "confidential information" misappropriation allegation, is as real as that discussed and remedied in cases involving vague claims of trade secret misappropriation.

Word 35022333.1

      1.      **AMS cannot reasonably evaluate Plaintiffs' allegation of "confidential information" misuse without knowing what "confidential information" Plaintiffs allegedly disclosed.**

AMS cannot reasonably answer Plaintiffs' Complaint without knowing what information AMS allegedly misappropriated. Plaintiffs provide no guidance in their Complaint as to what "information" they disclosed to AMS and what "confidential information" AMS misused. (*See* Compl. at ¶¶ 7-8.) Without such guidance, AMS cannot evaluate the claims against it. Thus, AMS cannot evaluate whether such information (1) was actually used by AMS, or (2) was already known by AMS when it was disclosed. Because Plaintiffs' allegation of "confidential information" misappropriation is central to each and every of plaintiffs' claims, AMS cannot evaluate **any** of plaintiffs' claims without knowing what information it allegedly took. *See Porous Media Corp. v. Midland Brake, Inc.*, 187 F.R.D. 598 (D. Minn. 1999) (ordering a specific listing of trade secrets upon which the allegations were based and stating, "the orderly disposition of cases involving claims of misappropriation of trade secrets cannot permit a situation where the details concerning the claimed trade secrets are not disclosed at an early date in the litigation."); (*See Id.* at ¶¶ 12, 15, 18, 21.)

      2.      **AMS and this Court cannot reasonably evaluate likely dispositive motions and defenses without knowing what "confidential information" Plaintiffs allegedly disclosed.**

Similarly, AMS and this Court cannot evaluate possible dispositive motions without Plaintiffs' specific disclosure of the allegedly-disclosed "confidential information." AMS cannot possibly prove, let alone formulate, defenses that it did not rely on Plaintiffs' alleged disclosures without knowing what was disclosed. Plaintiffs likewise handicap this Court in its evaluation of AMS's likely dispositive motions.

Moreover, prior art defenses available to AMS cannot yet be evaluated without knowing what "confidential information" AMS is alleged to have misused in procuring the patents at

8

issue, or which claims Dr. Dann claims inventorship of. Prior art may disclose information that Plaintiffs allegedly disclosed to AMS. *See, e.g.*, 35 U.S.C. § 102. Without a specific identification of the allegedly-disclosed "confidential information" and the particular claims at issue, AMS cannot evaluate or form possible prior art defenses related to those disclosures. It is unfair to force a defendant to battle such an allegation when defendant has no concept as to the specific subject matter of the claim. In order to frame its answer, AMS is entitled to an opportunity to evaluate whether the information allegedly disclosed to AMS was actually used by AMS or was already known by AMS when it was disclosed. *First Mut., Inc. v. Rive Gauche Apparel Distrib.*, Civ. A. No. 90-10899-Z, 1990 WL 235422, at *4 (D. Mass. Dec. 21, 1990) (Coco Decl. Ex. H.).

> **3.    AMS and this Court may suffer unnecessary and burdensome litigation and discovery abuse if Plaintiffs do not specify the "confidential information" it allegedly disclosed.**

Unnecessary and burdensome litigation is a real risk when a plaintiff makes a moving target, or no target at all, of vague allegations of "confidential information" misuse. *See Cambridge Internet Solutions, Inc. v. Avicon Group*, No. 99-1841, 1999 WL 959673, *2 (Mass. Super. Sept. 21, 1999) (identification was necessary "to ensure that plaintiffs are not using an unmeritorious lawsuit to discover a competitor's trade secrets") (Coco Decl. Ex. I.). Plaintiffs cannot be allowed to "fish" through AMS's confidential material in an attempt to connect something to their alleged confidential disclosure without first identifying what the "confidential disclosure" was. *See Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968) ("Before defendant is compelled to. . . embark on discovery which may be both prolonged and expensive, the [plaintiff] should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those who are skilled in the trade, to permit the defendant to ascertain at least the boundaries with which the

9

secret lies."); *accord Struthers Scientific and Int'l Corp. v. Gen. Foods Corp.*, 51 F.R.D. 149, 151-52 (D. Del. 1970) (refusing to allow plaintiff discovery until it specifically identified its allegedly misappropriated trade secrets).

**B.    Plaintiffs Have Sufficient Information To Identify The "Confidential Information" That It Allegedly Disclosed To AMS.**

Plaintiffs will undoubtedly argue that they should be allowed discovery before they are required to make a complete disclosure of the information AMS allegedly misappropriated. This argument should fail. As an initial matter, when Plaintiffs filed suit against AMS they were required to have a good faith basis for their claims. Fed. R. Civ. P. 11(b). Although a party may use discovery to add meat to its claims, a plaintiff must have some grounds to support the lawsuit before filing it. A good faith basis for filing claims founded on misappropriation of "confidential information" obviously includes knowledge of the specific "confidential information" that was allegedly misappropriated and that forms the basis of the lawsuit.

Moreover, Plaintiffs allege being in possession of the information that they provided to AMS. Plaintiffs' stated, "[w]e certainly appreciate your request for the information that Dr. Dann provided to AMS, although AMS is certainly in possession of this information **as well**." (Coco Decl. Ex. C) (emphasis added). In fact, AMS has not been able to locate any copies of any information provided by Plaintiffs. Plaintiffs' statement implies, if not acknowledges, their own possession of the information. According to its own representation, Plaintiffs should be ordered to identify the "confidential information" allegedly disclosed to AMS. *Cambridge Internet Solutions, Inc. v. Avicon Group*, No. 99-1841, 1999 WL 959673, *2 (Mass. Super. Sept. 21, 1999) (ordering plaintiff who "should have knowledge" of the confidential information at issue to identify with greater particularity the specific confidential information it claims was misappropriated) (Coco Decl. Ex. I.).

10

## CONCLUSION

Either Plaintiffs provided no confidential information to AMS and therefore cannot support their claims against AMS, or they have not complied in good faith with the obligation to plead with sufficient specificity to allow AMS to answer. In either case, AMS cannot reasonably be expected to be able to answer Plaintiffs' Complaint unless Plaintiffs specifically identify the "confidential information" they accuse AMS of misusing. Therefore, AMS respectfully requests that this Court order Plaintiffs to specifically identify the "confidential information" that forms the basis of their Complaint, and to indicate which claims of the three patents-at-issue are the claims to which they allege inventorship, with the particularity and specificity necessary for this Court and AMS to evaluate and answer its claims.

Respectfully Submitted,

AMERICAN MEDICAL SYSTEMS, INC.'S
By its attorneys,

Stephen L. Coco (BBO# 561169)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
111 Huntington Avenue
Suite 1300
Boston, MA 02199-7610
Phone: (617) 267-2300
Fax: (617) 267-8288
slcoco@rkmc.com

OF COUNSEL
Jake M. Holdreith
Misti N. Nelc
Jeffrey D. Gram
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Ave.
Minneapolis, MN 55402
Phone: (612) 349-8500
Fax: (612) 339-4181

Dated: March 21, 2005

11

Word 35022333.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **DEFENDANT AMERICAN MEDICAL SYSTEMS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A MORE DEFINITE STATEMENT PURSUANT TO FED. R. CIV. P. 12(e)** was served by messenger this 21st day of March, 2005, on the following:

Matthew B. Lowrie
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street, Eleventh Floor
Cambridge, MA  02142

_____
Stephen L. Coco

Word 35022333.1