IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NEBL, INC. and
JEFFREY DANN, M.D.,

    Plaintiffs,

v.

AMERICAN MEDICAL SYSTEMS, INC.,

    Defendant.

Civil Action No.:  04-cv-12482 (RGS)

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR
A MORE DEFINITE STATEMENT PURSUANT TO FED. R. CIV. P. 12(e)**

Plaintiffs NEBL, Inc. and Jeffrey Dann, M.D. (collectively "NEBL") hereby oppose the motion by defendant American Medical Systems, Inc. ("AMS") for a more definite statement pursuant to Fed. R. Civ. P. 12(e).

Through its motion, AMS is attempting to impede the progress of this case and take discovery out of turn, making the same assertions (such as a desire to avoid litigation or learn more about a case) that any defendant could make in any type of case, from tort by negligence to breach of contract, and which the Courts routinely rebuff.  The concerns that AMS raises simply are not legitimate.

AMS's motion should be denied because NEBL's Complaint is sufficiently definite to permit AMS to respond.  Moreover, this motion is not the appropriate vehicle for AMS to obtain the information that it claims to need.  AMS should seek that information through discovery.

# ARGUMENT

## I. The Allegations in the Complaint Are Sufficiently Clear

A more definite statement is needed only if a complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). Yet, the portion of NEBL's Complaint that AMS challenges is entirely plain and unambiguous. The Complaint alleges the wrongful use of "confidential information" by AMS (in violation of AMS's contractual obligations), as well as AMS's failure to attribute inventorship of two AMS patents to Dr. Dann, who is the true inventor. The specific factual bases for these claims were set forth in substantial detail, in the Complaint.

The Complaint states:

> 7. On December 3, 1997, AMS counter-executed a written contract titled "Confidential Disclosure Agreement" and attached hereto as Exhibit A. Plaintiffs provided information concerning methods and devices for implanting vaginal slings to AMS with an understanding of confidentiality.
>
> 8. AMS used confidential information of Plaintiffs for purposes other than its evaluation of the products referred to in the Confidential Disclosure Agreement.

This statement refers explicitly to the "Confidential Disclosure Agreement" that is the subject of AMS's breach. As if AMS had any doubt as to the nature of the contract that it had executed, the "Confidential Disclosure Agreement" itself was attached to the Complaint. Moreover, the Complaint clearly identifies the technology that is the focus of the present dispute. It is the "information concerning methods and devices for implanting vaginal slings" (Complaint, ¶ 7), which NEBL provided to AMS and which was the subject of the aforementioned Confidential Disclosure Agreement. With respect to NEBL's assertion that AMS failed to identify Dr. Dann as inventor of three U.S. patents, the Complaint identifies each of those patents, by patent

number (Complaint, ¶¶ 13, 16 & 19) and even attached copies of those patents to the Complaint. In view of the specificity of the Complaint, AMS's position that the Complaint is "so vague or ambiguous" that AMS "cannot reasonably be required to frame a responsive pleading" lacks credibility and must fail.  (See Fed. R. Civ. P. 12(e)).

AMS protests that it "has been unable to locate any confidential documents or video in its files from Plaintiffs."  (AMS's Memorandum, at 1).  This statement, even if true, has no impact whatsoever on AMS's motion.  Indeed, if AMS destroyed or disposed of the evidence that would reveal its wrongful use of information that it received in confidence, such fact may be significant in this lawsuit.  However, there can be no escaping the fact that AMS received the confidential information from NEBL -- otherwise, AMS would never have signed the "Confidential Disclosure Agreement" in the first place.  The existence of that executed agreement verifies that AMS knows exactly what "confidential information" is involved in this lawsuit.

Indeed, NEBL's Complaint goes well beyond what is required by Rule 12(e).  The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." Conley v. Gibson, 355 U.S. 41, 47 (1957).  On the contrary, the Rules require merely "a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id.  See also, e.g., 2 Moore's Federal Practice, § 12.36 (3rd ed. 2005) ("The motion for a more definite statement is not favored, because pleadings are to be construed liberally to do substantial justice.").

This basic principle of notice pleading has been applied to the particular types of claims in the present case.  In Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 755 F. Supp. 635, 636 (D. Del. 1991), for example, the court refused to require Leucadia to file a more definite statement detailing its confidential information; the Complaint was sufficient to meet the notice

pleading standard of the Federal Rules of Civil Procedure.  "Courts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets."  Id.  Similarly, in Compuware Corp. v. IBM, 259 F. Supp. 2d 597 (E.D. Mich. 2002), Judge Steeh denied IBM's motion for a more definite statement with respect to claims for copy right infringement, trade secret misappropriation, intentional interference with contractual relations, and unfair competition.  All of the claims were sufficiently pled under the notice pleading requirements.  The court there stated that "[w]hile Compuware has not identified the trade secrets 'clearly, unambiguously, and with specificity,' such is not necessary at the pleading stage" and held that "Compuware's allegations give adequate notice of its cause of action to IBM."  Id. at 605.

AMS's argument that it needed to be informed of the confidential information that was already communicated to AMS makes no sense.  Obviously, there was a proposed disclosure to AMS that was sufficiently clear and unambiguous for AMS to enter into a binding written contract, signed by AMS's own Director of New Business Development, concerning its limited permission to use that confidential information.  AMS cannot now seriously demand that it needs more detail regarding the "confidential information" to know the subject matter governed by the "Confidential Disclosure Agreement" that AMS executed.

AMS's asserts that NEBL must indicate which particular claims of the three patents-at-issue should be attributed to Dr. Dann.  Such a level of detail is also not required, in order to allege a cause of action under the patent laws.  Where Dr. Dann is an inventor on any part of the claims made in the patents, he is considered a co-inventor.  Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1465-66 (Fed. Cir. 1998).  Moreover, NEBL is entitled to discovery on the

patents-at-issue, in order to investigate whether there is any legitimacy to AMS's inventorship claim.  Raytheon Co. v. Continental Cas. Co., 123 F. Supp.2d 22, 26 (D. Mass. 2000) (finding that the information the defendant was seeking was "more appropriately obtained through discovery" than at the pleadings stage).

### II.     The Case Law Cited by AMS Is Contrary to AMS's Motion

AMS's case law is readily distinguished and, in reality, supports denial of AMS's motion.

AMS improperly compares this case to an unreported decision of this Court, First Mut., Inc. v. Rive Gauche Apparel Distrib., Civ A. No. 90-10899-Z, 1990 WL 235422 (D. Mass. Dec. 21, 1990) (Coco Decl. Ex. H), where the plaintiffs claimed that a settlement agreement governing the parties business relationships was the product of fraud.

Unlike the complaint in First Mutual, where the court had difficulty in determining what particular acts of each respective defendant were at issue, the Complaint in this case notes both the party and the acts – specifically that "AMS used confidential information of Plaintiffs for purposes other than its evaluation of the products referred to in the Confidential Disclosure Agreement" and "breached its contractual confidentiality obligations to Plaintiffs."  See Complaint, at ¶¶ 8-9.

What is more, allegations of fraud (such as in First Mutual) require particularized pleadings.  Fed. R. Civ. P. 9(b).  For the contract claims of the present case, there is no such requirement of a particularized statement.  Put another way, the Federal Rules are very clear about when a particularized statement is required – for allegations of fraud.  The Supreme Court has rejected the notion that particularized statements are required in any other context.

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).

AMS also cites an unpublished opinion by a Massachusetts state trial court, Cambridge Internet Solutions, Inc. v. Avicon Group, No. 99-1841, 1999 WL 959673 (Mass. Super. Sept. 21, 1999) (Coco Decl. Ex. I.), quoting a passage where the court found that allegations of misappropriation of "source codes, work processes and customer deliverables" were not identified with sufficient particularly.  Id., at *2.

What AMS fails to note, and the more pertinent part of a comparison to this case, is that the Court found that the references to misappropriation of the "business plan" identified by plaintiffs *was* alleged with "sufficient particularity" even if that was not the case for the "source codes, work processes and customer deliverables" which were "unidentified."  NEBL's references to a Confidential Disclosure Agreement that describes the information at issue (relating to "methods and devices for implanting vaginal slings") is of similar detail as alleging that a "business plan" was communicated and misappropriated.

AMS then cites a California case, Computer Economics, Inc. v. Gartner Group, Inc., 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999), that did not even pertain to any Rule 12 motion.  The "strong policy reasons" that AMS quotes in support of its motion seeking a more definite statement were reasons the court provided for disclosing information early in the discovery period, not at the Complaint stage.  See id.

### III. The Information Defendant Seeks Is More Appropriately Obtained Through Discovery

AMS's motion attempts to circumvent the discovery process and seek information in advance of an appropriate schedule of this Court.  Because the purpose of Rule 12(e) is to strike

at unintelligibility rather than want of detail, and NEBL's Complaint is not so vague or ambiguous as to make it unreasonable to use pre-trial devices to fill any possible gaps in detail, AMS's motion for a more definite statement must be denied. See Nelson v. Quimby Island Reclamation Dist. Facilities Corp., 491 F. Supp. 1364, 1384 (N.D. Cal. 1980) ("The various pre-trial devices for discovery can be utilized to fill in any possible gaps.") (citing 2A Moore's Federal Practice 8.13, at 8-115 (2d ed. 1979)).

AMS's Rule 12(e) motion is also being used simply to ascertain Plaintiffs' legal theories, and that is improper. Bryson v. Bank of New York, (S.D.N.Y. 1984) 584 F. Supp. 1306. AMS already has a sufficient basis for responding to the Complaint and its requests for additional information are merely fronts for garnering early-stage discovery from NEBL. See Federal Sav. and Loan Ins. Corp. v. Musacchio, 695 F. Supp. 1053, 1060 (N.D. Cal. 1988) ("The proper test in evaluating a motion under Rule 12(e) is whether the complaint provides the defendant with a sufficient basis to frame his responsive pleadings.").

A motion for a more definite statement under Rule 12(e) will not be granted to require evidentiary material which is more properly subject of discovery under Rules 26 through 36. Daugherty v. Firestone Tire & Rubber Co., (N.D. Ga. 1980) 85 F.R.D. 693.

This Court has found that "while defendants may prefer highly detailed factual allegations, a generalized statement of facts is adequate so long as it gives the defendant sufficient notice to file a responsive pleading." Raytheon Co. v. Continental Cas. Co., 123 F. Supp.2d 22, 33 (D. Mass. 2000) (quoting Langadinos v. American Airlines, Inc., 199 F.3d 68, 72-73 (1st Cir. 2000)).

In Raytheon, 123 F. Supp. 2d at 26, the Court determined that the information the defendant was seeking was "more appropriately obtained through discovery" and was not "so

vague or ambiguous" that the defendant could not frame a responsive pleading.  Other courts have published decisions holding that where the additional detail can be achieved through discovery, instead of through a 12(e) motion, the defendant must wait and seek the additional information in that manner.  See, e.g., Compuware Corp. v. IBM, 259 F. Supp. 2d 597 (E.D. Mich. 2002) ("Any further specificity desired by IBM can be achieved through discovery.").

It is well-understood that complaints need not be factually exhaustive, merely to satisfy the requirements of notice pleading.  For example, in Dolan v. Schreiber & Assocs., P.C., 2002 U.S. Dist. LEXIS 6005, at *15 (D. Mass. 2002), the court found that although "it may have been clearer if the Dolans specifically stated which count is alleged against which defendant(s), the degree of detail Defendants seek goes beyond pleading requirements," and "[t]hus, Defendants' motion for a more definite statement is denied."  Id.

The present case is much easier; here, there is no ambiguity as to which claims are asserted against which defendants – there is only one defendant.  AMS has no doubt about what it must respond to.

## CONCLUSION

Because AMS is able to file a responsive pleading to the Complaint served upon it without further elaboration, this motion should be DENIED.

Respectfully submitted,

NEBL, INC. and JEFFREY DANN, M.D.

| | | |
|---|---|---|
| Dated:  April 4, 2005 | by: | /s/ Emily A. Berger |
| | | Matthew B. Lowrie, BBO No. 563,414 |
| | | Emily A. Berger, BBO No. 650,841 |
| | | Lowrie, Lando & Anastasi, LLP |
| | | Riverfront Office Park |
| | | One Main Street - 11th Floor |
| | | Cambridge, MA 02142 |
| | | Tel : 617-395-7000 |
| | | Fax: 617-395-7070 |